IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROOSEVELT BELCHER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:17-cv-90-TFM |
| | ) [wo] |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Following administrative denial of his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401, *et seq.* and Supplemental Security Income benefits under Title XVI of the Social Security Act, Roosevelt Belcher, Jr. ("Belcher" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court concludes the Commissioner's decision denying supplemental security income benefits should be **REVERSED** and **REMANDED**.

### **I. NATURE OF THE CASE**

Belcher requests judicial review of the Commissioner of Social Security Administration's decision denying his application for disability insurance benefits and supplemental security income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.

42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 F. App'x 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the

Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520;[3] *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 458 (11th Cir. June 10, 2015). The ALJ determines:

---

[2]  SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3]  For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time the claim was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if

there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. BACKGROUND AND PROCEEDINGS

Belcher claims disability due to kidney stones, arthritis in all joints (pain/stiffness/swelling), total left hip replacement, pain in left hip and knee, and weak bones. (R. 253). Following initial administrative denial of his claim, Belcher requested a hearing before an administrative law judge ("ALJ"). (R. 99-112, 114-115). ALJ Tracy Guice ("the ALJ") convened an in-person hearing on September 24, 2015. (R. 30-76). Belcher was represented by a non-attorney representative. The ALJ received direct testimony from Belcher and a vocational expert. The remaining evidentiary record consisted of medical reports from treating sources, and a psychiatric review technique completed by a medical consultant who reviewed Belcher's

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

records upon request of Alabama Disability Determination Services.[5] The ALJ rendered an unfavorable verdict on October 29, 2015. (R. 9-29). On December 20, 2016, the Appeals Council denied Belcher's request for review (R. 1-6). This Social Security Appeal was filed on February 15, 2017. *See* Doc. 1, Complaint.

## V. ADMINISTRATIVE DECISION

Employing the five-step process, the ALJ found that Belcher has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2);[6] the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Belcher cannot perform his past relevant work (Step 4). (R. 14-23). As such, Belcher met his prima facie case for disability and the burden shifted to the Commissioner to show there are a significant number of jobs in the national economy which he can perform.

At Step Four, the ALJ found Belcher had the RFC to perform a reduced range of light work. (R. 17). Specifically, after evaluating the entire record, the ALJ determined Belcher would be able to lift and carry 10 pounds frequently and 20 pounds occasionally; sit for a total of six hours during an eight hour workday; stand and walk for a total of four hours during an eight hour workday; never walk on uneven terrain; occasionally use the lower extremities to push and pull; occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs; never climb ladders, ropes, or scaffolds; never work around unprotected heights or dangerous machinery;

---

[5] Lee Blackmon, M.D. (R. 314-327). "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a)(2005).

[6] The ALJ found the following "severe" combination of impairments: status post left hip replacement; parameniscal cyst in the left knee, lumbar radiculopathy, obesity, major depressive disorder with history of psychosis, and generalized anxiety disorder. (R. 14).

perform simple routine tasks involving no more than simple, short instructions and simple work related decisions with few work place changes; engage in occasional and non-transactional interaction with the general public; and sustain concentration and attention for two hour periods. (R. 17).

As a result of these limitations, the ALJ determined Belcher could not perform past relevant work. (R. 22). Therefore, the ALJ moved to Step Five to determine whether Belcher could perform other jobs in the national economy and determined there are jobs that exist in significant numbers in the national economy that Belcher could perform. (R. 23). The ALJ utilized the Medical-Vocational Rules and Vocational Expert testimony regarding jobs in existing in the national economy which Belcher could perform. The VE provided several examples of jobs which Belcher could perform such as surveillance monitor, order clerk processor, assembler, box inspector, and house sitter. (R. 23). Consequently, the ALJ found Belcher has not been disabled since the alleged onset date. (R. 24).

## VI. ISSUES

Belcher raises three issues on appeal:

(1) Whether the ALJ failed to properly consider the opinion's [sic] of Dr. Clark and the physical therapist regarding the limitations resulting from Mr. Belcher's prosthetic hip.

(2) Whether the ALJ erred in rejecting the only mental health evidence of record.

(3) Whether the ALJ's finding of Mr. Belcher's residual functional capacity is not based on substantial evidence.

*See* Doc. 12, Pl. Br. at p. 1.

The Commissioner re-characterizes the issue as essentially whether substantial evidence supports the ALJ's decision. *See generally* Doc. 13, Comm'r Brief. Regardless of the wording,

the Commissioner mostly addresses the issues raised by Plaintiff in the brief.

VII. DISCUSSION AND ANALYSIS

A.  **ALJ failed to properly consider the opinions of Dr. Clark and the physical therapist regarding the limitations from Mr. Belcher's prosthetic hip.**

In the case at hand, Plaintiff argues that the ALJ failed to specify the weight accorded to Dr. Clark and the hip restrictions placed upon Belcher post-left hip replacement. Plaintiff points to a March 26, 2014 treatment note which stated "hip precautions reviewed, restrictions and limitations reviewed." (R. 446). Plaintiff acknowledges Dr. Clark's records do not specify the limitations dismissed. The Commissioner argues that the ALJ was not obligated to address the March 2014 note because it was vague and ambiguous.

The regulations give preference to the opinion of the treating physicians. 20 C.F.R. § 404.1527(d)(1)-(2); *Winschel*, 631 F.3d at 1179 ("Absent good cause, an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight.") (internal citations and quotations omitted). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight . . . ." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). However, "the ALJ has the discretion to weigh objective medical evidence and may choose to reject the opinion of a treating physician while accepting the opinion of a consulting physician...[but] if he follows that course of action, he must show 'good cause' for his decision." *Gholston v. Barnhart*, 347 F.Supp.2d 1108, 1114 (M.D. Ala. 2003); *see also Phillips*, 357 F.3d at 1240 (quoting *Lewis,* 125 F.3d at 1440) (The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631

F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). In other words, the Eleventh Circuit has found good cause for discounting a treating physician's report when the report "is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir.1991)). Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records[.]" *Roth v. Astrue*, 249 F. App'x 167, 168 (11th Cir. 2007) (citing *Lewis*, 125 F.3d at 1440). However, the ALJ must clearly articulate his reasons for disregarding the opinion of a treating physician. *Winschel*, 631 F.3d at 1179. Thus, "[w]hen the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Schuhardt v. Astrue*, 303 F. App'x 757, 759 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)). The Commissioner's opposition fails for several reasons.

While there is some discussion of Dr. Clark's records, there is no discussion of the weight given to Dr. Clark. As a treating physician, Dr. Clark is due great weight unless good cause exists otherwise and is specifically addressed. The ALJ summarized the records with reference to the hip replacement, knee pain, back pain, and medications related to those maladies. However, there is no explicit discussion of the weight given to these records. There are circumstances where "implicit" rejection is acceptable, but there must still be adequate information for reviewing courts to look to when determining whether substantial evidence supports the outcome. It is questionable whether the ALJ's opinion gives the Court sufficient information to make that determination of how she evaluated Dr. Clark. However, that is not the sole problem here.

The Commissioner is correct that no inference should be drawn one way or another when

a physician's opinion is silent on an issue. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). However, Dr. Clark's records are not silent. The records indicate there are *some* precautions, restrictions, and limitations. The ALJ asked about those restrictions at the hearing and Plaintiff provided only minimal information on not running, falling could re-injure him, and "[he] just couldn't do the things that [he] used to do before." (R. 46). Physical therapy records provide some aid to fill the gap. On one hand, the Commissioner asks the Court to ignore the general statement by Dr. Clark while also ignoring the records from the physical therapist where more significant limitations are discussed which could clarify Dr. Clark's general statement. Though a physical therapist is not an "acceptable medical source," that does not also merit an outright rejection. As noted by a sister court:

> This total rejection of the opinions of the plaintiff's treating physical therapist is improper and unreasonable. Section 416.913(a) of the Commissioner's regulations determines who are acceptable medical sources for the purposes of establishing whether a claimant has a medically determinable impairment. However, once medical evidence from acceptable medical sources establishes the presence of a severe impairment, testimony from other medical sources may be used. Section 404.913(e) provides as follows:
>
> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. . . . Other sources include, but are not limited to --
>
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and **therapists**).
>
> 20 CFR § 404.913(e)(emphasis added).

*Reliford v. Barnhart*, 444 F. Supp.2d 1182, 1188 (N.D. Ala. 2006). "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and

may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p.[7]

In the case at hand, though Ms. Cook is a physical therapist, her records seem to align with the more generalized statement by Dr. Clark and provide a more thorough picture on the potential restrictions placed on Belcher post-hip replacement. Though Ms. Cook may not be afforded the automatic great weight of a treating physician, her records and statements should be considered when reviewing the Plaintiff's medical records as a whole.

Finally, the ALJ indicates that "gaps in treatment" play a role in her credibility determinations for both the physical and mental impairments. (R. 19, 22). While lack of treatment is certainly an issue to be considered by an ALJ, there are also repeated references in the record to Plaintiff's inability to receive treatment due to a lack of finances and insurance which even the ALJ acknowledges. (R. 18-19, 47, 49, and 68). It is well established in this Circuit that poverty can excuse non-compliance with taking medication and even the failure to seek treatment. *See, e.g. Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment."); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("To a poor person, a medicine that he cannot afford to buy does not exist.").

Though this case is somewhat distinguishable in that the ALJ did not base her opinion *solely* on noncompliance, it is an issue the Court finds the ALJ should have discussed especially as she partially based her credibility finding on the fact Belcher had gaps in treatment – which clearly aligns with the lack of insurance. The ALJ makes no reference in her opinion to

---

[7] *Supra* note 3 regarding using versions in effect when the claim was initially filed.

Belcher's lack of financial resources and insurance which were clearly raised both in the hearing and the overall record. Therefore, "the ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment." *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (citing Social Security Regulation 96-7 at 7, 1996 WL 374186, 1996 SSR LEXIS 4). Therefore, this failure to address financial resources and ability to seek treatment also constitutes legal error which merits remand.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes the ALJ erred and substantial evidence does not support the decision. Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. A separate judgment will be entered.

DONE this 26th day of February, 2018.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE